COURT OF APPEALS
DECISION
DATED AND FILED

February 6, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP290-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF1612

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TYLER J. CLARK,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Dane County: CHRIS TAYLOR, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Tyler Clark appeals a conviction for possession of child pornography, challenging the circuit court's denial of his two motions to

suppress. Clark raises two overarching arguments. First, he challenges the constitutionality of a search warrant, arguing that a provision in the warrant that permitted police to compel him to make his biometric information available violated his Fifth Amendment privilege against compelled self-incrimination and that the warrant violated his Fourth Amendment rights because it lacked particularity and was overbroad. Second, Clark contends that the court erred in failing to suppress a statement that he made after he invoked his right to counsel, specifically, his recitation of the passcode to his cellphone in the presence of police.[1] For the reasons that follow, we reject Clark's arguments and affirm.

## BACKGROUND

¶2 In 2019, the City of Madison Police Department received information from the National Center for Missing and Exploited Children (NCMEC) that NCMEC had received information from Tumblr linking Clark to child pornography on a Tumblr account.[2] After reviewing the images provided by Tumblr to NCMEC and discovering that the Internet Protocol (IP) address associated with the account was in Clark's father's name at a residence in which Clark resided with his parents, police obtained a search warrant. Pertinent here, the warrant authorized police to search Clark's residence, Clark's person, Clark's vehicle, and the vehicles belonging to Clark's parents, with whom Clark then resided. The warrant also contained a provision authorizing police to access

---

[1] Although Clark's motion in the circuit court and his discussion on appeal refer to the suppression of "statements," the only statement specifically mentioned is the statement reciting his passcode.

[2] Tumblr is a social media platform that allows users to post images and videos and to engage in direct messaging conversations with other users.

biometric information of persons related to any mobile devices identified during the warrant's execution:

> During the execution of the search warrant, law enforcement personnel are authorized to press the fingers (including thumbs) of individuals found to have ownership, access to, or possession of mobile devices, to the Touch ID sensor of such device(s), for the purpose of attempting to unlock the devices in order to search its contents. Additionally, law enforcement personnel are authorized to position device(s) in such a way that the device has the ability to recognize the facial characteristics of the owner o[r] person in possession of said device(s) in the event that "facial recognition software" is utilized in the process of unlocking the device.

¶3 In addition, the warrant authorized police to search for and seize: "[i]mages or visual depictions representing the possible exploitation, sexual assault and enticement of children" and "[a]ny documents in whatever format, including digital/electronic data and written or printed material evidencing, or tending to evidence, the possible exploitation, sexual assault and/or enticement of children." The warrant further described all of the items subject to search and seizure as "things [that] may constitute evidence of a crime, to wit[:] Possession of Child Pornography committed in violation of [WIS. STAT. §] 948.12(1m) …."

¶4 According to the criminal complaint filed against Clark, police detained Clark as he was leaving his residence and executed the search warrant. Police seized Clark's cellphone, and it was turned over to a digital forensic analyst at the Wisconsin Department of Justice Department of Criminal Investigation (DCI). Using the passcode to the cellphone that Clark provided, the analyst located a video file containing several images of child pornography, which were consistent with the images provided to law enforcement through Tumblr. The State charged Clark with three counts of possession of child pornography.

¶5  Clark filed two motions to suppress. In one motion, Clark challenged the search warrant itself. Clark argued that the warrant violated his Fifth Amendment right against compelled self-incrimination because it allowed police to compel him to provide biometric information, specifically, fingerprints and a facial recognition scan. In this motion Clark also challenged the warrant on Fourth Amendment grounds, arguing that it lacked particularity and was overbroad because it "authorized the seizure of 'any and all' materials, 'any document in whatever format ... tending to evi[nce] the possible exploitation, sexual assault[] and/or enticement of children'" and also authorized the search of both Clark's and his parents' vehicles.

¶6  Clark's other motion requested suppression of a statement that he made after invoking his right to counsel, namely, his recitation of the passcode to his cellphone in the presence of police. Clark argued that after Clark invoked his right to counsel, a detective stopped the interrogation and said that he would not ask any more questions, but then, a short time later, the detective told Clark that the search warrant authorized police-compelled fingerprint or facial recognition to unlock Clark's cellphone. Although the detective told Clark that Clark did not have to provide his passcode, when police allowed Clark to use his cellphone to contact his boss, Clark said his passcode out loud as he typed it, and police heard it. Clark argued that he made this statement after he invoked his right to counsel while he was in custody, that the statement was involuntary and the result of police coercion, and that the statement should therefore be suppressed, consistent with the Fifth and Sixth Amendments and due process.

¶7  The circuit court held a suppression hearing at which City of Madison Police Department officers testified to the following. Detective Mark Hull investigated internet crimes against children. Hull investigated Clark for

possession of child pornography as a result of cyber tips that police received regarding alleged pornographic images posted on Tumblr that were linked to Clark's email account and to an IP address belonging to Clark's father at a residence where Clark lived with his parents.

¶8      Based on this information, Hull obtained a warrant to search Clark's residence, including for electronic devices.  While executing the search warrant, police took Clark into custody.  Officer Shane Olson handcuffed Clark, took Clark's cellphone from him to turn over to the detectives, and put Clark in the back of Olson's squad car.  Detective Bradley Ware assisted Hull by sitting in on a subsequent interview with Clark, taking notes, and holding Clark's phone.

¶9      Hull and Ware moved Clark from Olson's squad car to an unmarked detective car, with Hull and Clark sitting in the back seat and Ware sitting in the front seat.  Hull read Clark his *Miranda* rights,[3] told Clark that it was his choice whether to talk to Hull, and had Olson remove Clark's handcuffs.  Hull interviewed Clark for about 15-20 minutes before Clark invoked his right to counsel.[4]  During the interview, Hull asked Clark if he would provide a passcode to his cellphone and Clark responded that he "[did not] feel comfortable sharing that."  Clark made a similar statement when Hull asked Clark for the passcode to Clark's computer.

¶10     As soon as Clark invoked his right to counsel, Hull stopped the interview, told Clark that Hull was not going to ask Clark any more questions, and

---

[3]  *See **Miranda v. Arizona***, 384 U.S. 436, 479 (1966).

[4]  The interview in Olson's squad car was recorded and a transcript created.

informed Clark that police would leave a copy of the search warrant at Clark's residence and that Hull would recontact Clark later to give Clark a copy of the search warrant. Hull then moved Clark back to Olson's squad car while police searched Clark's residence. Clark was not handcuffed while in Olson's squad car. Olson did not interrogate Clark, but Olson made "small talk" with Clark until Hull and Ware returned about 15 minutes later and had a second contact with Clark. It was Hull's understanding at the time that, during this second contact with Clark, Hull could not lawfully interrogate Clark because Clark had invoked his right to counsel. However, Hull believed that he could check on Clark, give him a copy of the warrant, and summarize the nature of the investigation and the search warrant to Clark, "without interrogating" him. Hull also intended to execute the part of the warrant that allowed him to compel Clark to unlock his cellphone by use of facial recognition, although Hull did not end up executing this provision.[5]

¶11     During the second contact, Hull showed Clark the search warrant and told Clark that it allowed police to compel Clark to unlock his cellphone by providing a fingerprint or through facial recognition. During these particular interactions Hull and Ware were standing outside of Olson's squad car, about three feet away from Clark as he sat in the back seat, with Ware standing behind Hull, and the back passenger door open. When Clark asked Hull if Clark had to give the officers his passcode, Hull responded, "No, you don't." After Hull told Clark that he did not have to provide his passcode, Clark asked Hull if he could have his cellphone back to contact his boss. Hull gave Clark his cellphone but

---

[5] The suppression hearing testimony did not reveal what specific unlocking functions, if any, Clark's cellphone model had. The testimony from the DCI analyst was that she did not recall if Clark's cellphone model allowed unlocking through a fingerprint but that she believed it had the capacity to be unlocked through facial recognition.

stayed close to Clark to ensure that Clark did not damage or destroy the cellphone, which Hull considered to be "critical evidence in this case." Hull did not stand close to Clark for the purpose of observing Clark enter his passcode. Hull believed that Clark would open his cellphone using facial recognition. Hull "had no belief" that Clark was going "to say a passcode" and did not specifically ask Clark for his passcode.

¶12 When Hull returned Clark's cellphone to him, Clark entered his passcode and, as he was doing so, said the passcode "out loud." After Clark said his passcode out loud, Hull repeated it incorrectly; Clark corrected Hull, saying his passcode out loud again; Hull repeated it again; and Ware, who was standing outside the squad car behind Hull, heard it and wrote it down. After Clark had already said the passcode out loud twice, Hull said something like, "What?" in apparent reference to the passcode.

¶13 After Clark texted his boss, Hull took back Clark's cellphone and gave it to Ware, who delivered it to the DCI analyst. Clark was later arrested for possession of child pornography.

¶14 Police never executed the biometric information portion of the search warrant by making compelled use of either fingerprint access or facial recognition for any device.

¶15 The warrant authorized a search not only of Clark's vehicle, but also of vehicles registered to his parents, because police did not know what vehicles Clark had access to or used. Further, although Clark was the primary suspect in the child pornography investigation, the provisions of the search warrant that authorized police to compel use of biometric information from anyone at the residence were necessary because there could have been "someone else that is in

this house" who was involved in the possession of child pornography, particularly because the IP address connected to Clark's Tumblr account was in Clark's father's name. Clark and his parents lived together in this residence, and it was possible that anyone using that IP address could have downloaded the child pornography.

¶16 The circuit court denied Clark's motions to suppress. As to Clark's Fifth Amendment challenge to the warrant, the court determined that the court did not have to reach the constitutionality of the biometrics provision because police did not execute that provision or obtain any evidence based on it. Moreover, the court concluded that the biometrics provision could be severed from the remainder of the warrant. The court also rejected Clark's Fourth Amendment challenge. The court determined that the warrant properly allowed police to search Clark's computer and cellphone and other computers and devices at the address because, although Clark was the primary suspect, it was not "clear as to whether others in the residence could have been engaging in this activity, given that the IP address is associated with an address and there could be other people living there." Further, the court noted that all of the incriminating evidence was found on Clark's cellphone.[6]

---

[6] The circuit court also suggested that incriminating evidence may also have been found on Clark's computer, but this appears to have been based solely on the prosecutor's equivocal statement at the hearing that "there may be a computer, but it would be Mr. Clark's computer," when the court asked whether it was true that all of the incriminating evidence was found on Clark's cellphone. Defense counsel agreed that the incriminating evidence all came from Clark's devices. On appeal, the parties do not discuss any device other than Clark's cellphone and as a result we treat the contents of Clark's cellphone as the only digital evidence that Clark seeks to suppress.

¶17    Regarding Clark's parents' vehicles, the circuit court found that no incriminating evidence was seized from the vehicles and concluded that Clark did not have standing to challenge the search of the vehicles. The court also rejected Clark's overbreadth challenge to the warrant's authorization for seizure of images, visual depictions, and any documents evidencing "the possible exploitation, sexual assault [and/or] enticement of children," concluding that this language accurately describes child pornography.

¶18    The circuit court also denied Clark's motion alleging that police obtained his passcode in violation of his constitutional rights. As to his Fifth and Sixth Amendment claims, the court determined that although Clark was in custody when he said his passcode out loud within the hearing of police, at that time he was not being interrogated by the police nor was his statement coerced. The court also concluded that police did not engage in the functional equivalent of an interrogation. The court credited Hull's testimony that he renewed contact with Clark in order to summarize the contents of the warrant, including the biometric provision. The court further credited Hull's testimony that he did not ask Clark to provide his passcode, and found that Hull "explicitly told Mr. Clark he did not need to provide the passcode." The court found that Clark "asked several times if he had to provide [the passcode] and he was told no." The court also credited the testimony, summarized above, that when Clark entered his passcode, he said it out loud, Hull repeated it incorrectly, and "Clark rerepeated his passcode because [Hull] had switched a number." Additionally, the court determined that Clark's saying his passcode out loud was "spontaneous" and voluntary on his part, and that there was no evidence that Clark was coerced into providing his passcode. The court found that although Hull said, "What?" this occurred "after the passcode

information was provided." For these reasons, the court denied both of Clark's motions to suppress.

¶19 Clark subsequently pled guilty to one count of possession of child pornography, with the other two counts dismissed and read in. He was sentenced and a judgment of conviction was entered. Clark appeals.

## DISCUSSION

### I. Standard of Review

¶20 Clark argues that the circuit court erred in denying his motions to suppress. When reviewing a decision on a motion to suppress evidence, we uphold the circuit court's factual findings unless they are clearly erroneous, but we independently apply constitutional principles to the facts. *State v. Lonkoski*, 2013 WI 30, ¶21, 346 Wis. 2d 523, 828 N.W.2d 552. We also review a circuit court's credibility determinations under the clearly erroneous standard. *State v. Jenkins*, 2007 WI 96, ¶33, 303 Wis. 2d 157, 736 N.W.2d 24.

### II. Validity of the Warrant

¶21 Clark challenges the validity of the warrant. He contends that the warrant's biometrics provision violated his Fifth Amendment right against compelled self-incrimination and that the warrant violated the Fourth Amendment because it was overbroad and lacked particularity.

### A. Fifth Amendment Challenge to the Warrant

¶22 Under the Fifth Amendment, a person may not be compelled in any criminal case to be a witness against himself or herself. U.S. CONST. amend. V. "To qualify for the Fifth Amendment privilege, a communication must be

10

testimonial, incriminating, and compelled." ***Hiibel v. Sixth Jud. Dist. Ct. of Nev.***, 542 U.S. 177, 189 (2004); *see also* ***State v. Mark***, 2006 WI 78, ¶16, 292 Wis. 2d 1, 718 N.W.2d 90.

¶23　Clark argues that the warrant's biometrics provision violated his Fifth Amendment rights because it allowed police to compel "testimonial information" from him. We first note that, in making this argument, Clark repeatedly and incorrectly states that the warrant allowed police to compel him to provide the passcode to his cellphone.[7] The warrant contained no such authorization. As stated, the warrant's biometrics provision authorized police, during the execution of the warrant, "to press the fingers (including thumbs) of individuals found to have ownership, access to, or possession of mobile devices, to the Touch ID sensor of such device(s), for the purpose of attempting to unlock the devices in order to search [their] contents." It also authorized police to "position [the] device(s) in such a way that the device has the ability to recognize the facial characteristics of the owner o[r] person in possession of said device(s) in the event that 'facial recognition software' is utilized in the process of unlocking the device." The warrant did not compel individuals to provide passcodes to unlock mobile devices. Thus, to the extent that Clark's argument is predicated on the incorrect assertion that the warrant authorized police to compel him to provide a passcode, his argument fails.

¶24　Moreover, any challenge to the biometrics provision itself fails. In rejecting Clark's Fifth Amendment challenge, the circuit court determined that it did not have to address the constitutionality of the biometrics provision because

---

[7] The State makes this same error on appeal.

the provision was never executed, and that, even if the provision were unconstitutional, it was severable from the remainder of the warrant and therefore would not invalidate the remainder of the warrant. *See **State v. Sveum***, 2010 WI 92, ¶34, 328 Wis. 2d 369, 787 N.W.2d 317 (severability doctrine "permits reviewing courts to excise the defective portions of an otherwise valid warrant" so that items seized pursuant to the valid parts of the warrant may be admitted). These are the same positions that the State advances on appeal.[8]

¶25    As to the circuit court's conclusion that the biometrics provision is severable, we note that, although Clark discusses severability in the context of his Fourth Amendment overbreadth and lack of particularity argument, he does not specifically address severability as to his Fifth Amendment challenge. Accordingly, we could deem Clark to have conceded that the court correctly determined that the severability doctrine applies with respect to his Fifth Amendment challenge. *See **Schlieper v. DNR***, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (appellant concedes issue when "appellant ignores the ground upon which the trial court ruled and raises issues on appeal that do not undertake to refute the trial court's ruling"). However, to the extent that Clark means to extend his severability arguments to his Fifth Amendment challenge, we reject these arguments for the reasons we explain below in discussing Clark's Fourth Amendment challenge.

---

[8] The State also argues that being compelled to provide fingerprints or facial identification does not implicate the Fifth Amendment because it does not compel the provision of "testimonial" information. Because we reject Clark's challenge to the biometrics provision on other grounds, we do not address this argument. *See **Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

¶26    Clark's only specific response to the circuit court's ruling (and the State's argument) on his Fifth Amendment challenge to the biometrics provision is his unsupported assertion that "[i]t makes no difference in the Fifth Amendment analysis that law enforcement did not execute the warrant's [biometrics] provision." In making this assertion, it may be that Clark also intends to address the court's severability determination. Regardless, we reject any argument predicated on this assertion as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments). Further, Clark's blanket statement is contrary to case law. *See State v. Marten*, 165 Wis. 2d 70, 77, 477 N.W.2d 304 (Ct. App. 1991) (court declined to address whether probable cause supported a warrant provision authorizing search of outbuildings because warrant was not executed as to outbuildings, no evidence was seized from them, and outbuilding provision was severable from remainder of warrant).

¶27    To the extent that Clark may mean to make a more limited argument that the failure of police to execute the biometrics provision "makes no difference" under the facts of this particular case, we also reject this argument. Clark may intend to suggest that, because Hull read or showed the biometrics provision to Clark prior to Clark saying his passcode out loud, Clark's recitation of the passcode was necessarily compelled by the biometrics provision or by Hull's pointing out that provision to Clark, thereby violating Clark's Fifth Amendment rights. However, Clark presents no authority or persuasive argument supporting the proposition that police merely reading or showing him the biometrics provision rendered the provision unconstitutional. To the extent that Clark intends to argue that Hull's reading the provision to Clark compelled Clark's recitation of the passcode, as we discuss more fully in addressing Clark's Fifth and Sixth

Amendment challenges below, Clark fails to show a nexus between the two actions. As noted, the circuit court found that Clark's recitation of his passcode was "spontaneous" and that Clark had previously asked Hull more than once if Clark had to give his passcode and was told that he did not. The court also determined that there was no evidence that Clark was coerced into giving his passcode. As we point out below, Clark does not show, or even argue, that the court's findings of fact are clearly erroneous, nor does he show that the court's legal conclusions are in error.

¶28 In sum, because the biometrics provision was not executed and can be severed from the remainder of the warrant, and because Clark fails to offer any legal or factual support that would undermine the circuit court's ruling, we reject Clark's Fifth Amendment challenge to the warrant.

B. Fourth Amendment Challenge to the Warrant

¶29 The warrant clause of the Fourth Amendment to the United States Constitution provides three requirements for a valid search warrant: "(1) prior authorization by a neutral, detached magistrate; (2) a demonstration upon oath or affirmation that there is probable cause to believe that evidence sought will aid in a particular conviction for a particular offense; and (3) a particularized description of the place to be searched and items to be seized." *Sveum*, 328 Wis. 2d 369, ¶20; *see also* WIS. STAT. § 968.12(1). The issuing court must "determine whether, under the totality of the circumstances, given all the facts and circumstances set forth in the affidavit, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Sveum*, 328 Wis. 2d 369, ¶24 (quoted source omitted). A reviewing court affords "great deference to the warrant-issuing judge's determination of probable cause and that determination will stand unless

the defendant establishes that the facts are clearly insufficient to support a finding of probable cause." *State v. Higginbotham*, 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991).

¶30 The Fourth Amendment requires that a warrant state with particularity the place to be searched and the items to be seized. *Sveum*, 328 Wis. 2d 369, ¶20. The particularity requirement ensures that the warrant "'enable[s] the searcher to reasonably ascertain and identify the things which are authorized to be seized.'" *Id.*, ¶27 (quoted source omitted). Under this standard, the warrant is required to describe the place and items with only "as much particularity and specificity as the circumstances and the nature of [the] activity under investigation permit[]." *State v. Petrone*, 161 Wis. 2d 530, 541, 468 N.W.2d 676 (1991), *overruled on other grounds*, *State v. Greve*, 2004 WI 69, ¶31 n.7, 272 Wis. 2d 444, 681 N.W.2d 479.

¶31 Clark argues that the warrant violated the Fourth Amendment because it lacked particularity and was overly broad in the following four respects. First, he argues, it permitted police to improperly compel use of biometric information from individuals in the residence other than Clark in order to access their digital devices. Second, it allowed police to improperly search Clark's parents' vehicles. Third, "it allowed police to seize items for which there was no probable cause," specifically, by including the "necessary or helpful" language that we discuss below. Fourth, it authorized a search for and seizure of any evidence of "possible exploitation, sexual assault and/or enticement of children," which, according to Clark, allowed police to search for evidence "far beyond simply child pornography." Clark's arguments are without merit.

15

¶32     Regarding Clark's first argument, as discussed above, the biometrics provision was not executed as to Clark or anyone else in the residence, and no incriminating evidence was obtained as a result of the compelled use of anyone's biometric information. Just as the biometrics provision may be severed from the remainder of the warrant in the context of Clark's Fifth Amendment challenge, discussed above, so too may it be severed in the context of Clark's Fourth Amendment challenge, as case law makes clear.

¶33     For example, in *Marten*, a search warrant authorized police to search defendant Marten's residence, yard, and outbuildings for marijuana and drug paraphernalia. *Marten*, 165 Wis. 2d at 72-73. Marten argued that the warrant was fatally overbroad because there was not probable cause to support a search of his yard or outbuildings. *Id.* at 76. This court concluded that the complaint submitted in support of the warrant established probable cause to believe that marijuana would be found in Marten's residence. *Id.* at 75. However, we declined to decide whether there was probable cause to search the yard and outbuildings because "there [was] no evidence that these areas were ever searched, and it [did] not appear that any evidence was found in them." *Id.* at 77. As a result, we concluded that "the portion of the warrant authorizing a search of the yard and outbuildings may be severed from the portion authorizing the search of Marten's home" and that "[t]he items seized from the house remain unaffected and may be properly admitted in evidence." *Id.* Consistent with *Marten*, we reject Clark's contention that the warrant lacked particularity and was overly broad because it authorized police to access the biometric information of others in the residence besides Clark.

¶34     In the same vein, the reasoning in *Marten* also resolves Clark's challenge to the warrant provision that authorized police to search Clark's parents' vehicles. There was no evidence, nor does Clark argue, that these vehicles were

16

ever searched or that any incriminating evidence was found in them. Thus, as in *Marten*, because "there [was] no evidence that these areas were ever searched, and it [did] not appear that any evidence was found in them," we apply the severability doctrine to uphold the provisions of the warrant under which the incriminating evidence at issue was lawfully seized. *Id.* at 77.[9]

¶35 Clark argues that the severability doctrine does not apply for two reasons. First, relying on *State v. Noll*, 116 Wis. 2d 443, 343 N.W.2d 391 (1984), Clark argues that the warrant here contained descriptions that were too general and generic, analogous to a warrant provision in *Noll*, which described "various long-play photograph record albums, and miscellaneous vases and glassware items" that the *Noll* court deemed constitutionally defective for lack of particularity. *See Noll*, 116 Wis. 2d at 451. Specifically, Clark refers to the following descriptions in the warrant here: "computer hardware devices" and "all such equipment that can collect, analyze, create, display, [convert,] conceal, record or transmit electronic, magnetic, optical[, or similar computer or electronic impulses or data]." We first observe that, rather than addressing the circuit court's ruling on severability, this appears to be an additional argument on lack of particularity. In any event, Clark fails to develop an argument explaining why there was not a "'fair probability'" that evidence of child pornography would be found in these locations, which is all that was required. *See Sveum*, 328 Wis. 2d 369, ¶24

---

[9] The State alternatively argues that Clark lacked standing to challenge warrant provisions related to his parents and that such provisions were permissible given that, at the time the warrant was sought, the officers had information that other people resided at Clark's residence and that the IP address associated with the possible child pornography was in Clark's father's name. Because we resolve this issue on other grounds, we need not address these arguments. *See Barrows*, 352 Wis. 2d 436, ¶9.

(quoted source omitted). Accordingly, we reject this argument. *See Pettit*, 171 Wis. 2d at 646 (we need not address undeveloped arguments).

¶36 Second, purporting to rely on *United States v. Naugle*, 997 F.2d 819 (10th Cir. 1993), as persuasive authority, Clark asserts that the severability doctrine can apply only when the greater part of the warrant is valid and that here, "there was no valid portion to the warrant." But once again, Clark does not develop a reasoned argument in support of his assertion and we reject it on this basis. *Pettit*, 171 Wis. 2d at 646.

¶37 Turning to Clark's third argument, that the warrant allowed police to seize items for which there was no probable cause, this rests on a misinterpretation of the warrant. According to Clark, the warrant "states that information identified by the [forensic] analyst as 'necessary or helpful' to understand everything else that was seized is also authorized." Clark argues that this language "allows for the seizure of anything at the discretion of officers" and "gives *carte blanche* permission to police officers to seize anything they believe mildly helpful in showing Clark was engaged in anything wrong without specifying what it was they were to look for and seize." Clark's assertions are based on an inaccurate interpretation of the warrant's "necessary or helpful" language. This language is contained in a provision that authorizes law enforcement to conduct a forensic examination of the devices described in, and seized pursuant to, the warrant. Once these devices are seized, the provision at issue authorizes police to

> [c]onduct a full or partial forensic examination/analysis of the devices or the contents of the devices using accepted computer forensic examination tools and techniques, for the purpose of locating, documenting, preserving and/or determining the presence or absence on or in the device of, but not limited to, the following:
>
> ….

18

> i. Contextual information identifiable by the analyst and necessary or helpful to understand the evidence otherwise described in [the attached warrant affidavit].

Thus, the "necessary or helpful" language pertains only to items that are seized and describes the purposes for which a forensic analysis may occur. Contrary to Clark's assertion, this does not authorize police to "seize anything they believe mildly helpful in showing Clark was engaged in anything wrong without specifying what it was they were to look for and seize." Further, in making this assertion, Clark ignores the statement in the warrant describing the items subject to search and seizure as "things [that] may constitute evidence of a crime, to wit[:] Possession of Child Pornography committed in violation of [WIS. STAT. §] 948.12(1m)." Accordingly, we reject Clark's assertions as unsupported by the language of the warrant authorizing a forensic examination for particular purposes of the devices seized.

¶38 Clark's fourth overbreadth argument is based on the warrant provision authorizing police to search for and seize evidence of "possible exploitation, sexual assault and/or enticement of children."[10] According to Clark, this allowed police to search for evidence "far beyond simply child pornography" because "[c]hild pornography is a narrow subset of child exploitation related crimes." According to Clark, the provision therefore "allows officers to rummage for whatever they desire." We agree with the circuit court's assessment that the description at issue adequately describes child pornography, particularly in

---

[10] Clark argues that, by failing to respond to this specific argument in the circuit court, the State conceded it. As noted, the court addressed and rejected this particular argument. Moreover, the State responds to the merits of this argument on appeal (as well as to Clark's argument that the State conceded the issue). Thus, even if in responding to Clark's particularity argument in the circuit court the State did not address this particular aspect, we decline to apply any rule of concession or forfeiture.

conjunction with the warrant's further description of the items subject to seizure as "things [that] may constitute evidence of a crime, to wit[:] Possession of Child Pornography committed in violation of [WIS. STAT. § ] 948.12(1m)." We conclude that this language sufficiently "'enable[s] the searcher to reasonably ascertain and identify the things which are authorized to be seized'" and therefore satisfies the particularity requirement. *See Sveum*, 328 Wis. 2d 369, ¶27 (quoted source omitted).[11]

### III. Fifth and Sixth Amendment Challenge Regarding Clark's Statement

¶39    Clark argues that Hull violated his Fifth Amendment right against compelled self-incrimination and his Sixth Amendment right to counsel by "continuing interrogation after Clark [in]voked his right to counsel" and by "compel[ling] Clark's statement reciting his passcode."

¶40    *Miranda* warnings inform a suspect who is in custody both of the suspect's Fifth Amendment right against compelled self-incrimination, which includes the right to remain silent, and the Sixth Amendment right to have a lawyer present during interrogation. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966); *State v. Santiago*, 206 Wis. 2d 3, 19, 556 N.W.2d 687 (1996). The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI.

---

[11] The State also argues that any error in denying suppression of evidence seized pursuant to the warrant was harmless and that if the warrant was partially invalid, the exclusionary rule does not apply because officers relied on the search warrant in good faith. Because we resolve the warrant issues on other grounds, we need not address these arguments. *See Barrows*, 352 Wis. 2d 436, ¶9.

¶41 Once an accused invokes the right to counsel during a custodial interview, any custodial interrogation must cease until counsel has been made available to the accused, "unless the accused himself [or herself] initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). A custodial interrogation is "express questioning or its functional equivalent." *See Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). Express questioning "does not encompass every inquiry directed to the suspect"; instead, it "covers only those questions 'designed to elicit incriminatory admissions.'" *State v. Harris*, 2017 WI 31, ¶16, 374 Wis. 2d 271, 892 N.W.2d 663 (quoted source omitted). The "functional equivalent" of a police interrogation includes any "'words or actions ... (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Id.*, ¶19 (quoted source omitted).

¶42 Whether an officer's words or actions constitute the functional equivalent of an interrogation turns on an objective foreseeability test: if an objective observer could foresee that the officer's conduct or words would elicit an incriminating response and "'reasonably have had the force of a question on the suspect, then the conduct or words would constitute interrogation.'" *Id.*, ¶22 (quoted source omitted). Courts must consider "the entire context within which the dialogue took place." *Id.*, ¶23. To be considered an interrogation or its functional equivalent of express questioning, the officer's statements or conduct "must exert a compulsive force on the suspect." *Id.*, ¶30. "'Interrogation' 'must reflect a measure of compulsion above and beyond that inherent in custody itself.'" *State v. Hambly*, 2008 WI 10, ¶46, 307 Wis. 2d 98, 745 N.W.2d 48 (quoted source omitted). For example, police verbally summarizing to a suspect

incriminating evidence against the suspect is not necessarily compulsive enough to constitute the functional equivalent of express questioning. *Id.*, ¶57.

¶43    Whether the officer "should have known" that the suspect "would suddenly be moved to make a self-incriminating response" depends on the facts; merely because an officer's comments might strike a "responsive chord" with a suspect or the suspect was subjected to "subtle compulsion," is not enough to create the functional equivalent of interrogation. *Innis*, 446 U.S. at 303. "'Volunteered statements of any kind are not barred by the Fifth Amendment.'" *Arizona v. Mauro*, 481 U.S. 520, 529 (1987) (quoted source omitted). Even if the officer may hope that the suspect will incriminate himself or herself, this does not by itself render the officer's words and actions the functional equivalent of an "interrogation." *Id.*

¶44    Clark's Fifth and Sixth Amendment challenge rests solely on his assertion that, contrary to the circuit court's conclusion, when police reinitiated contact with Clark, they engaged in the functional equivalent of interrogation. He argues that their conduct was reasonably likely to elicit an incriminating response, and that therefore Clark's recitation of his passcode was compelled. *See Harris*, 374 Wis. 2d 271, ¶19 ("functional equivalent" of a police interrogation includes any "words or actions … that the police should know are reasonably likely to elicit an incriminating response from the suspect"). Clark offers the following four grounds for this proposition.

¶45    First, Clark quotes the circuit court's finding crediting Hull's testimony that Hull reinitiated contact with Clark "'to explain the warrant and to explain the biometric provision.'" Clark argues that the court failed to address Hull's testimony that another reason that Hull reinitiated contact with Clark was to

execute the facial recognition provision. It is true that, in making its initial ruling, the court did not mention this other motive testified to by Hull. However, after Clark raised this issue in a motion for reconsideration, the court addressed it, concluding that "Hull's 'intent' to attempt to execute this portion of the warrant does not change the fact, as I recognize in my original decision, that the biometric data collection portion of the warrant was never actually executed." On appeal Clark fails to develop an argument that either Hull's other motivation or the court's failure to initially address it has any bearing on the court's ultimate ruling that Clark's recitation of his passcode was voluntary, particularly given that Hull never executed the facial recognition provision. *See **Pettit***, 171 Wis. 2d at 646.

¶46     Second, Clark argues that Hull's testimony that he did not tell Clark that Clark had to provide his passcode was "unreliable." In support of this assertion, Clark states, "Hull was there to unlock the iPhone, by his own assertion. That extended to providing the passcode—providing a thumbprint or Face ID constitutes providing a passcode of an iPhone device." As an initial matter, Clark fails to provide any factual or logical support for the assertion that a passcode is indistinguishable from a thumbprint or facial identification. Further, this argument is irrelevant in light of the fact that Hull never compelled any biometric information. Finally, as noted, the circuit court found that Hull did not ask Clark for his passcode and that Clark's recitation of the passcode was "spontaneous." Clark does not argue that these findings are clearly erroneous.

¶47     Third, Clark contends that Hull's testimony that he did not expect Clark to recite his passcode was "unreasonable" because Hull should have known that Clark would incriminate himself. He further argues that, regardless of Hull's subjective belief, "It is evident that putting a warrant in someone's face, reading from the section compelling biometric information, and pointing to the judge's

signature would have been 'reasonably likely to elicit an incriminating response from the suspect.'" In making this argument, Clark fails to explain the nexus between Hull's actions and Clark's recitation of his passcode, particularly given the context in which Clark's recitation occurred. As noted, Clark did so after he was explicitly told more than once that he did *not* have to provide a passcode and after he had previously declined to do so when asked during his prior contact with Hull. In addition, Clark's recitation of his passcode occurred in the context of his request to contact his employer, being permitted to do so, and saying his passcode out loud as he was typing it in. Clark also fails to support his assertion with any case law or developed argument. *Pettit*, 171 Wis. 2d at 646 (undeveloped legal arguments and "[a]rguments unsupported by references to legal authority will not be considered").

¶48    Fourth, Clark argues that the evidence from the suppression hearing showed that at the time he said his passcode out loud in the presence of police he "was upset, likely nauseated,"[12] had never had contact with law enforcement before, was in a squad car, had just been released from handcuffs, and had two to three officers around him. However, Clark does not explain why these facts, when considered in the context of all of the circumstances here, establish that police compelled Clark to provide his passcode. Again, police did not ask him to do so and explicitly told him more than once that he did not have to.

---

[12] Detective Hull testified at the suppression hearing that during his questioning of Clark, before Clark invoked his right to counsel, Clark made a statement about "'trying to keep his fucking breakfast down.'" Hull was also questioned by defense counsel about whether Clark was "burping repeatedly," and Hull testified that he could not recall.

¶49 Based on the circuit court's findings of fact not shown to be clearly erroneous, and Clark's failure to make a persuasive argument to the contrary, we agree with the court's determination that police were not interrogating Clark, nor was there the "functional equivalent" of an interrogation, when Clark stated his passcode.

IV. Due Process Challenge Regarding Voluntariness of Clark's Statement

¶50 Clark argues that his statement providing his passcode was an involuntary statement because it was procured by coercive police conduct, in violation of his right to due process.

¶51 The Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 8 of the Wisconsin Constitution require that a criminal defendant's statements be voluntarily made before the statements may be admitted into evidence in a criminal case. *State v. Vice*, 2021 WI 63, ¶28, 397 Wis. 2d 682, 961 N.W.2d 1. "When a defendant raises a voluntariness challenge, the State must prove by a preponderance of the evidence that the statements made by the defendant were voluntary." *State v. Kruckenberg*, 2024 WI App 45, ¶36, 413 Wis. 2d 226, 11 N.W.2d 131. A defendant's statements are voluntary if those statements "'are the product of a free and unconstrained will, reflecting deliberateness of choice, as opposed to the result of a conspicuously unequal confrontation in which the pressures brought to bear on the defendant by representatives of the State exceeded the defendant's ability to resist.'" *Id.* (quoted source omitted).

¶52 "Whether a defendant's statements were voluntary involves the application of constitutional principles to historical facts." *Id.*, ¶37. "We defer to the circuit court's findings regarding the factual circumstances that surrounded the

making of the statements unless those findings are clearly erroneous." ***Id.*** "However, the application of constitutional principles to those facts is a question of law that we review independently." ***Id.***

¶53     The well-established test for voluntariness considers the totality of the circumstances in balancing "the personal characteristics of the defendant against pressures imposed by law enforcement officers to determine if the pressures exceeded the defendant's ability to resist." ***State v. Lemoine***, 2013 WI 5, ¶3, 345 Wis. 2d 171, 827 N.W.2d 589.

¶54     Although "some coercive or improper police conduct must exist in order to sustain a finding of involuntariness," ***State v. Hoppe***, 2003 WI 43, ¶46, 261 Wis. 2d 294, 661 N.W.2d 407, "[o]ur supreme court recognizes that police pressures 'that are not coercive in one set of circumstances may be coercive in another set of circumstances if the defendant's condition renders him or her uncommonly susceptible to police pressures,'" ***Kruckenberg***, 413 Wis. 2d 226, ¶40 (quoted source omitted).

¶55     In arguing that his statement was coerced and involuntary, Clark points to several facts, including that:  police approached Clark while he was exiting his home; Clark was handcuffed at one point and placed in various squad cars; he was upset during police questioning and "presumably nauseated"; he was 25 years old, was living with his parents, and had no prior law enforcement contact; he invoked his right to an attorney; and he was later shown the warrant and informed of the biometrics provision.[13]  Clark does not develop an argument,

---

[13] Clark also asserts, without support to the record, that he had been "arrested" at the time he recited his passcode aloud.  If this is intended as an argument or an element of an argument, we reject it as undeveloped.

supported by legal authority, that as a result of these facts, the recitation of his passcode was the product of a "conspicuously unequal confrontation in which the pressures brought to bear on the [him] by representatives of the State exceeded [his] ability to resist." *Id.*, ¶36.

¶56 Indeed, the primary basis for Clark's involuntariness argument appears to be that Hull's recontacting Clark after Clark invoked his right to counsel and Hull's showing and summarizing the biometrics provision to Clark somehow compelled Clark's recitation of his passcode. We reject Clark's argument for the same reasons stated above. Clark in effect ignores the circuit court's findings of fact, which provide the context in which Clark recited his passcode, and which we have summarized above. Clark does not argue that the court's findings are clearly erroneous, and he provides no authority to support his assertion that coercion exists under these circumstances. As a result, he fails to provide a basis for us to disturb the court's conclusions that "there was no interrogation" and no "evidence of coercion," and that Clark's recitation of his passcode was voluntary.[14]

## CONCLUSION

¶57 For the reasons stated, we affirm the circuit court's denial of Clark's motions to suppress.

---

[14] The State also argues that we may affirm the circuit court's denial of Clark's motion to suppress his statement based on the inevitable discovery and harmless error doctrines. Because we affirm the court's ruling on other grounds, we need not address these arguments. *See* **Barrows**, 352 Wis. 2d 436, ¶9.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.